Morning. Morning, Your Honors. My name is Tyler Sims. I'm a third-year law student at Seton Hall University School of Law. Along with my classmate, Brian Spadora, we will be arguing for the appellant, Sunita Patel, in this matter. Pursuant to Rule 46-4, we are supervised by Professor Barbara Moses, seated at council table. Glad to have you all here. Thank you. We appreciate the court's indulgence as well to split the argument today. I will be arguing the issue of probable cause for about six minutes, and my co-counsel will be arguing qualified immunity for seven minutes, and we request two minutes upon rebuttal. Agreed. Thank you. May it please the court, this case arises out of the wrongful arrest of Sunita Patel just down the street a few blocks at the Fourth Avenue Jail. In viewing the light, in viewing the evidence, excuse me, in the light most favorable to Ms. Patel, no reasonably prudent person, given the totality of the circumstances known to Deputy McGuire at the time, would have believed that Ms. Patel committed a crime, much less two crimes. The district court erred in proffering, excuse me, in applying the summary judgment standard, Your Honors. Well, counsel, this is a little bit different than some cases. We have a video of the whole thing. It's, I gather you're not disputing the accuracy of the video, are you? Absolutely not, Your Honor. So the facts are pretty clear. And do you agree that the standard that we look at here is the totality of the circumstances? Correct. Is there any case of which you are aware where the Supreme Court, or for that matter the comparable circumstances, that there was not probable cause to arrest a demonstrator where your client and others were warned three different times before the arrest occurred to move back, get off the street? Anything like that? Yes, Your Honor. In fact, the opinion delivered by Judge Nelson in Dubner is very close to the facts in our case, Your Honor. It dealt with a legal observer who was arrested outside of the San Francisco Convention Center. And the facts are pretty similar. You look at the statute in that case, and it talks about a deliberate attempt to obstruct. And as again Judge Nelson said in her opinion, the district court made a mistake in the ruling because there was no deliberate attempt to obstruct. And it's important to view that case, Your Honor. Catholic, forgive me. Maybe I read that case differently than you do. But in this case, the question is not whether your client could be convicted of the crime. It's whether there was probable cause to arrest her. And those are quite different, are they not? Absolutely. Absolutely. So here, is it your position that, for example, the fact that she was wearing a green hat, is there something in the record that suggests that a green hat immunizes someone from arrest or something? No, Your Honor. We do not contend that the green hat immunizes anyone from arrest. What about the fact that she claims to have been on a portion of the street that at least she claims is not part of the roadway? Does that have anything to do with whether or not there was probable cause? Absolutely, Your Honor. And why is that? Given the totality of the circumstances, both of those points that you just made, the fact that she was a legal observer and the fact that she was in a gutter which was visually distinguishable from the driveway, those two facts go directly towards whether there was probable cause in this case. Counsel, let me just say, we have to look at it from the perspective of the deputy. Would a reasonable deputy have arrested her? He didn't know she was a legal advisor, did he? Well, Your Honor, with the green cap, there's no evidence in the record that he was, but with the green cap it says legal observer brightly on it. And Defendant Trombi also mentioned in his deposition that he informed Lieutenant Brackman that legal observers would be there as well. Did he see her cross the driveway after the order was given? He does not state that he saw her cross the driveway. So he didn't see her move in response to the command, is that correct? There's no evidence to that, Your Honor. All right. You keep harshing on this hat. What is the significance of the hat? This is her own private hat, right? Right. This isn't a uniform issued by the sheriff or anything. It's the National Lawyers Guild. Well, whatever. I mean, it's her private property, it's her own hat. Correct. She could have worn a hat that said Diamondbacks or Budweiser or anything, right? So the hat doesn't give her any special authority, does it? No, it does not. Okay. So the officer says clear the driveway. And the next thing you know, she's still in the street standing in the gutter, not on the sidewalk, right? Correct. And I'd like to point, Your Honors, to the two specific intent elements to this the officer must have probable cause for those two specific intent elements. Well, is there any indication that she didn't purposefully place herself where she was? She placed herself where she was, but in a good faith effort to comply with the order. You can see clearly from the video that there's right... How is the officer supposed to know that she had, you know, her motive was one thing when he says clear the area, she's still in the street? Well, it goes to the events that happened that morning. For example, Your Honors, the U-Formation. When the U-Formation came out of the Sally Port entrance, it pushed people only as far as the gutter. And that's clear from the video. And the officers throughout the morning seemed satisfied through their gesturing, their hand motions, that the gutter was a place that was in compliance with their order all morning. Those are facts known to Deputy McGuire at the time. And again, those facts known to Deputy McGuire show that he lacked probable cause in this case, because a reasonable officer with those facts under the totality of the circumstances would have known that she was not in willful disobedience. The willful disobedience that morning, Your Honors, was the human chains, the daisy chains, the people holding banners directly in the middle of the asphalt part of the asphalt driveway. Counsel, aren't you confusing what the government would have to prove to be successful in prosecuting the crime for which your client was arrested, as opposed to having probable cause to arrest? The Supreme Court's made it very clear that the officers are not judged with hindsight. They're judged under the circumstances. When you watch the video, it's very clear, a lot of noise, a lot of chanting, a lot of things being said to the officers, none of which were complimentary. They were trying to move people back, to try to get people to move. Your client remained out in the middle of the street until the third call, maybe just before the third call. And the fact is, at least at that point, unless these officers were somehow trained in Spanish law, they're not going to know the contention that you would have that that was not part of the street. The question is, on the scene at that time, did the officer have a reasonable belief, based upon the totality of the circumstances, that your client was in willful disobedience of the order to disperse or get off the driveway? Your Honor, I'd like to point to another fact that was omitted from the district court opinion. She was standing right next to a bollard. And that bollard is, in effect, to block vehicles from hitting the jail. And, you know, even in Lieutenant Brackman's deposition, he states that a car can pass safely by the bollard. So there's no evidence that she was recklessly obstructing the public thoroughfare that morning. But forgive me, counsel, there may very well have been no evidence that she was intentionally trying to obstruct. That's not the question, is it? The question is, was she obeying the officers, the repeated order? That's the question here. Not what the defense would have been in connection with trying to defend against the prosecution. So how does her standing next to a bollard have anything to do with whether there was probable cause if she did not move off the street as the officer understood it? It shows that she, again, Your Honor, right when the order was being given, she made a good-faith attempt, given the throngs of people, to comply with that order. And, again, that order, throughout the morning, had only meant to cover... Are you saying that she could not have moved up on top of the curb? Well, regardless if she could have moved up on top of the curb, Your Honor, the actual order said clear the driveway. And she did her best, and again, given the circumstances that morning and the actions of the officers that morning, to comply with that order. And that's why the local... If I were a police officer and I said, everyone clear that aisle, and you stood outside one of those benches and moved really close to that, would you be obeying my order? Well, it depends on the circumstances, Your Honor. If there's a lot of people blocking the aisleway, and I'm doing my best to obey your order and get into the aisle, but I'm blocked or, for example... Okay, but I thought you said there was no evidence, one way or another, about whether she couldn't get up on the curb. We don't know if anybody blocked her way, right? That's correct. So there's no evidence, and if we transfer what I just said to you, there's no evidence you couldn't get into the seat. You're just standing there. And if I said, everybody clear, would I have probable cause to arrest you for failing to obey a lawful order? Again, it depends on the circumstances, Your Honor. If I am making a good faith effort to clear the aisle, then you would not have probable cause to this specific intent element. I'd like to turn over the rest of my time to Mr. Spadoro. Thank you so much. May it please the Court, Brian Spadoro, also for appellant Sunita Patel. Your Honors, as the Court knows, the question of qualified immunity requires a two-pronged analysis the Court can address, either prong first. In this case, the first prong, whether a constitutional right was violated, is subsumed by the probable cause question addressed by Mr. Sims. You agree, counsel, if there is probable cause, then you lose on the qualified immunity issue, right? We do lose on qualified immunity if there's probable cause, Your Honor. I would therefore turn my attention to the second prong, which asks whether the right that was violated was clearly established at the time of the incident. In a Fourth Amendment case such as this one, which of course is highly dependent on facts which vary from case to case, the Supreme Court has said that the dispositive question is whether a reasonable officer in the defendant's position would have known he was violating the plaintiff's rights in the circumstances he confronted. The Court has emphasized the notice that a reasonable officer would have of the law at the time. We don't have to speculate as to how well established the law, particularly those two specific intent elements were, because both Lieutenant Brackman and Deputy McGuire testified in their depositions that just a couple hours before Ms. Patel was arrested, they sat down and they read both of those statutes. A reasonable officer having done so would have known. This is not a strict liability crime where, well, maybe technically where you're standing kind of looks like the driveway. No. The crime requires that Ms. Patel, that there would be, and the issue before this Court, is whether a reasonable officer would have believed that Ms. Patel knew what she was being told to do and said, I'm not doing it. That's not what happened here. Is the question on qualified immunity whether the officers read the statute or whether the Supreme Court has indicated that, in fact, similar to this, there would be a constitutional violation? Those are the two prongs, Your Honor. The first prong, the constitutional violation, would be if there was an arrest without probable cause, which, of course, we believe. And the second prong, it's not merely that they read the statute. That fact goes to the circumstances that a reasonable officer in Deputy McGuire's situation would have confronted. He would have known definitively that Ms. Patel had to willfully disobey that order, that this, as I said, is not a strict liability crime. Mr. Fedora, let me ask you a procedural question, change the subject for a moment. There's no question but that Judge Wake entered a final judgment here. But it looks as though there were other claims that were brought that he didn't deal with, but for whatever reason entered a final judgment. I take it you have acquiesced in that order? We have not, Your Honor. Did you ever object to the form of his judgment? We did not, Your Honor. First, I began working on this case months after this appeal was filed. I'm familiar with the record below. I'm probably not as familiar with it as I am with the facts on appeal. I would note, though, that there was a Rule 12 motion to dismiss the supervisory liability and Manila liability. Judge Wake denied that motion. And there was also an interrogation claim? There was. Ms. Patel was detained for 15 years. Somehow that got subsumed and all this. That was also thrown out? Yes. And there's no objection to his having done that, I take it? Well, Your Honor, I don't believe there was an objection. Ms. Patel confined her response, her objection to the summary judgment motion to those issues raised by the county. The county captioned their motion, a motion for summary judgment. Yeah, we're talking about two different things. I'm saying now we have – I gather you're not pursuing these other claims any further. Those are dead letters? No, Your Honor. We believe that even if the court finds that there is qualified immunity, that there's still the question of supervisory liability and there's still the question of the Manila claim. How do we get there if you didn't object to it or? Your Honor, I don't have a definite answer to your question. I would hope that on remand that could be decided and we could move perhaps for additional discovery on the supervisory liability. But again, that's not the area of the case with which I'm most familiar. I see you're almost out of time. I know you wanted to reserve some rebuttal. Yes. Thank you. Thank you very much. Good morning. Good morning. May it please the Court. My name is Anne Ulietta. I represent the appellees. Would you please speak up? Yes, Your Honor. Sorry. My name is Anne Ulietta. I represent the appellees other than Deputy Hindershot. Deputy Hindershot is represented by Mr. Markson. I am planning to take 13 minutes and reserve two minutes for Mr. Markson. This case, as Your Honor has already identified, is a case wherein there is undisputed, uncontroverted video evidence that was submitted to the Court. So the conduct of the plaintiff and of the arresting officer are clearly depicted on the recording. And the plaintiff also made a number of judicial admissions that bind her and her First Amendment complaint. And all of that evidence came to the district court. And you can see from the video, and she admits in her First Amendment complaint, that there was a massive protest in the street and in the drive in front of the jail on July 29, 2010, in connection with SB 1070, which became effective that day. Counsel, let me just ask you this. Why couldn't a sympathetic jury conclude that the order to clear the sidewalks did not require the protesters to move up onto the sidewalk? Was there any order to move onto the sidewalk? Yes, Your Honor. There is evidence on the video that Lieutenant Brackman specifically said twice, get on the sidewalk. And Sunita Patel, in her First Amendment complaint, twice alleged facts that she was present in the driveway and heard him make those statements. Later in the morning, Lieutenant Brackman made additional orders, leave the drive. And in that particular drive, the only place to go is to the sidewalk. The sidewalk is intended under Arizona law for pedestrian traffic. That was the legal and appropriate place for them to protest and to stand. However, she decided to stand in the driveway. After she filed her First Amendment complaint where she says that she was on the sidewalk in compliance with an order to go there, we produced the videos. And when we produced the videos, suddenly it was clear. She wasn't on the sidewalk. So now she wants to justify a false arrest claim. Now she's arguing that the concrete part of the driveway is not in the driveway. And that's just not true. Under Arizona law, the driveway is curb to curb. An Arizona officer trained in Arizona traffic law is going to know that. And when he orders protesters, leave the drive, that means get out of the concrete gutter, get out of the asphalt middle part of the drive, leave the drive and get up on the sidewalk. She had more than one opportunity to leave the drive. She was there in the driveway for at least a minute after the final order. What did she do? Did she step back the 3 to 18 inches that she says she was standing in the drive? That's where the sidewalk was. There wasn't anyone preventing her from stepping back. There's no evidence of that. Instead, she stands there. She watches two other people arrested by Deputy McGuire. She takes photographs of them. Then Deputy McGuire turns around. She's the closest person to him and to the Sally Port door. Therefore, he arrests her. In his mind, in a reasonable officer's mind, seeing everything that happened on the driveway that day, knowing the multiple dispersal orders that were provided to these protesters and including Sunita Patel, it was reasonable for him to conclude that there was a fair probability that she knew about the order, she was aware of the order, she was aware of where she was standing, and she simply failed to comply. That's a willful noncompliance and it provides a fair probability and it provides probable cause. And with regard to the public thoroughfare part of the arrest, as the video shows the court, in the street that day, there were so many protesters that no traffic could get through on Madison Street. No traffic could get through to the jail. Those are both public thoroughfares since 1895 in the city of Phoenix. These are used by traffic every single day in the city of Phoenix. That is evidence that we presented through our testimony of our officers as well as the Rose affidavit and through the city plat. And Sunita Patel doesn't dispute this. So it's a cause and effect. You have a lot of protesters standing in the driveway. The officers have an obligation to ensure public safety. They shut down the street. What happens next? They need to open the street. How are they going to do that? They give the dispersal orders. A lot of protesters didn't comply. They arrested the daisy chain people, the human chain people, hoping probably that these people would now get the message and move off. They didn't do that. A lot of people stayed, including Patel. What happened next? U-Formation. They push the protesters back in the hopes that they would get up on the sidewalk, clear out of the drive. That law enforcement action only didn't work the way they wanted to, obviously. A lot of people stayed in the drive. Sunita Patel was one of the people who walked straight in front of the U-Formation knowing, from the orders, that she was supposed to leave the drive. She stands directly in front of the officers and takes her photographs. Then she walks to the side and stands in the drive. All right, the U-Formation didn't work. They retreat. They go back behind the Sally Port door. All the protesters run up to the front, and it's clearly, they can't even close the door. The video shows Brackman has to go back out with his officers. They establish another formation. And when they do that, they make more orders, and they say, you've got five minutes to get out of the drive. They go back in, shut the door. What happens next on the video, you can see. Sunita Patel. She walks back into the Sally Port. She starts talking to people. And then when Brackman comes back out with his officers, you can see her on the video. He's shouting in the bullhorn, leave the drive or you will be arrested immediately. Clearly. She's standing right behind him. Now she says in her response paper, in her papers, that she didn't hear him. But Deputy McGuire doesn't know that she can't hear him. And so when he hears the orders, he sees her standing there. She walks to the side and takes photographs while everyone else is being arrested. In his mind, in a reasonable officer's mind, not only is she willfully violating the dispersal order, but now she's standing in the driveway and preventing the reopening of the driveway. She's blocking a public thoroughfare. How did you manage to get a final judgment with this other claim still pending? Yes, Your Honor. The claim that you're referring to is in the fact count number three. That is a count wherein Patel alleges that John and Jane Doe's allegedly interrogated her for some number of hours with respect to her immigration status. During the course of the case, we had a scheduling order. And that was ER 179, I'm sorry, ER 205, document number 74. And the court set April 6, 2012 as the deadline for amendment of the complaint to name defendants in connection with the John and Jane Doe wrongful interrogation claim. April 6, 2012 goes by, no amendment. Then we go through the summary judgment process. They don't raise this issue in summary judgment whatsoever. Why should they raise it? I mean, why would they raise it? You didn't raise it. No one raised it. That's true, Your Honor. Okay. So it's not raised. Somehow it gets dismissed. So we get the final judgment. And Patel does not file a Rule 59 or Rule 60. She doesn't object to the form of the order. She does nothing. Instead, she appeals only this issue having to do with the entry of the summary judgment for the defendants. And the first time she raises the issue about the interrogation claim is in her reply on appeal. And she waived that claim. She abandoned that claim. That claim is not a claim that survives the dismissal of this case, Your Honor. Well, from your perspective, there is nothing pending in the case except what has been appealed here, with the possible exception of the Doe allegations, which at least arguably were made in the context that they were for the first time on appeal. Is that correct? That's correct, Your Honor. Unless, of course, if the probable cause is not affirmed. No, I understand that. But I'm just saying, as of right now, is it your position that the case is over? There was a final appealable order? Or are the parties up here solely on the qualified immunity issue and the rest is just kind of waiting there for whatever happens? No, Your Honor. It's a final appealable order to which there was never any objection made by the plaintiff. So there is just nothing left there. They obviously have a different perspective. But from your perspective, the order that was issued was a complete final order, nothing pending. That's right, Your Honor, because at that time when we got the final order, they had never amended their complaint and complied with the scheduling order, so they waived that claim. Okay. Let me be clear on this. Assuming we do not find probable cause, what do we do with the charge of recklessly obstructing a public thoroughfare as the basis for probable cause? Does that go away? If you do not find probable cause for either one of the crimes, then obviously that would go away. There would still be qualified immunity, however, for all of the individual defendants with respect to that particular crime as well as to the noncompliance with the lawful order. So whether or not she acted recklessly would not come into play at all? The reckless component applies only in the context of the blocking of the public thoroughfare. So if, Your Honor, we're to find that the officer did not have probable cause to arrest her for the public thoroughfare crime, then the recklessly component goes with that. And then we're left with the qualified immunity for which they don't cite any existing precedent beyond debate on July the 29th, 2010, that would have given fair notice to Deputy McGuire and a reasonable officer in his position that the arrests were unlawful. Thank you. Do you agree, just to follow up on an earlier question, that the post-arrest interrogation complaint or the allegation is gone as well? Yes, that's the fact, count number three, that we just discussed. They did not name any defendants for that claim. And the district court had instructed them to do so. Is that correct? Yes, specifically. Thank you, Your Honor. I would like to, unless you have other questions, I'd like to provide the rest of my time to Mr. Markson. Good morning, Your Honors. My name is Barry Markson. I represent David and Anna Hendershot. I just want to point out, first of all, join in Ms. Uglietta's comments today and incorporate them with my own remarks. Mr. Hendershot was the Chief Deputy for the Sheriff's Office at that time. But important for this case, he was not at the scene. He did not arrest or order the arrest of Ms. Patel. He did not supervise this action or lead it. He did not participate in any part of the planning of what was going to occur that day by the Sheriff's Office. There's no allegation that Mr. Hendershot personally violated a constitutional right, and no probable cause allegation against him personally. In fact, the appellants never mentioned David Hendershot's name in the opening brief. It's not there at all. The questions raised on appeal did not mention the individual supervisory defendants, and Mr. Hendershot was not mentioned until about halfway through the reply. It's simply not a question on appeal here. But if we get past that, and if the Court does find probable cause, I did want to point out that the case law cited by the appellant regarding qualified immunity for the supervisory individual defendants, it really favors Defendant Hendershot and the other individual defendants. Is that because of Monell? It's because of Monell, Your Honor, but also in the cases cited in Lacey and in KLR and in Lawrence, all of those involved active participation by the supervisor. And there's no responding in superior liability, is that what you're saying? No, he just did nothing as to it at all. And as a result, he is entitled to qualified immunity in this case, regardless of whether probable cause is found. Thank you. Thank you, Mr. Merson. Brad, would you put two minutes on the calendar, on the clock, please, for rebuttal? Hang on a second, we're getting the clock. I appreciate the additional time, Your Honor. Okay, there we go. Okay, Your Honors, a couple quick points on rebuttal. First, to know what a reasonable officer confronted with the circumstances that Deputy McGuire confronted would have done on that day, we need look no further than the actions of the presumably reasonable 12 to 15 other officers on duty. One officer on duty that day arrested a civilian who was not standing in the middle portion, the asphalt portion of the driveway, and that was Deputy McGuire. So if they all arrested her, that would be a different case? I'm sorry, Your Honor? If they all arrested her, that would be a different case? No, Your Honor. How would he have to arrest her? While we have never argued that the police must arrest everyone, surely if the action were reasonable, the police had ample opportunity to arrest people situated precisely as Ms. Patel was, and no other officer did so. After Ms. Patel's arrest, the video shows a group of about 8 to 10 officers standing, surveying the crowd, dozens who were standing precisely where Ms. Patel was, and none of them take any action to arrest. This action that was just minutes prior judged to be willful and reckless. I think that speaks to the unreasonableness of Deputy McGuire's conduct. That's really a novel concept, that if only one officer makes an arrest based upon what he or she sees, that unless other officers make similar arrests, people acting likewise, that there's no probable cause. Is that what you're contending? Respectfully, Your Honor, it's not a novel concept, bar Henry V. Ramsey, which is a case that we cited in our brief, looked to the objectively reasonable actions of other officers at a protest at which qualified immunity was denied to an officer who made unreasonable arrests that weren't based on probable cause. Your Honors, we are on this case. Can you name the case again, please? Barham, B-A-R-H-A-M, V. Ramsey. We are on sobering judgments, Your Honor, and therefore the facts must be viewed in light most favorable to the non-moving party. Though there is video evidence here, a number of the facts in the county's argument were mischaracterized. Ms. I'm sorry. Finish your sentence and then I see you're out of time. Sure. Okay. Ms. Patel was not the closest person to the Sally Port Door. She was not standing in the middle of the driveway. She made a good faith effort to clear the driveway. There was no reasonable person who could conclude she was willfully disobeying in order to disperse. Thank you, Your Honors. Thank you very much. The case just argued is submitted. I especially want to thank the law school for taking on this case and for the fine job you did. Good job up here, too.
judges: Nelson, Silverman, Smith